UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                            :

WENDY LIGHT and IVAN LIGHT,  :

                                            :

                Plaintiffs,  :

                                            :        **OPINION AND ORDER**

      - against -                    :

                                            :        10 Civ. 4449 (SAS)

W2001 METROPOLITAN HOTEL  :
REALTY LLC and W2001  :
METROPOLITAN HOTEL  :
OPERATING LESSEE LLC d/b/a  :
DOUBLETREE HOTEL  :
METROPOLITAN,  :

                                            :

               Defendants.  :
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.    INTRODUCTION**

       Wendy and Ivan Light bring suit for damages arising from personal injuries sustained by Wendy Light as a result of bed bug bites that occurred while she was a guest in a hotel located in midtown Manhattan.[1] Plaintiffs allege that the defendant hotel operator ("the Metropolitan") breached its duty of care to Light by negligently failing to provide a reasonably safe environment.

---

[1] Ivan Light asserts a derivative claim for loss of consortium, which is not directly at issue in the present motion. Therefore, for the sake of simplicity, any reference to "Light" is a reference to Wendy Light.

1

Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.[2] Defendants now move for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the negligent infliction of emotional distress ("NIED") cause of action, the availability of punitive damages, and any cause of action arising from alleged false or misleading advertisement. For the reasons discussed below, defendants' motion is granted.

## II. BACKGROUND

Plaintiffs' Amended Complaint lists three causes of action: (1) negligence, (2) intentional infliction of emotional distress, and (3) loss of consortium.[3] Since filing the Complaint, plaintiffs have withdrawn their claim for intentional infliction of emotional distress ("IIED").[4] Plaintiffs have also confirmed that they "[would] not be proceeding . . . on a state-based claim of false advertising," but intend to incorporate the false advertisement allegation into the

---

[2]  Plaintiffs are citizens of California, while defendants are New York corporations with their principal place of business in New York.

[3]  *See* Plaintiffs' First Amended Complaint ("Compl.") at 5-7.

[4]  *See* 2/17/11 Letter from Norman Perlberger, Counsel for Plaintiffs, Ex. N to Declaration of Mayya Gotlib, Counsel for Defendants, in Support of Defendants' Motion for Summary Judgment ("Gotlib Decl."), at 1.

2

negligence claim.[5] Plaintiffs have indicated that they "believe that our negligence claims do properly plead and may go forward to show the severe emotional harm [] Light suffered as a result of defendants' negligence."[6] Additionally, plaintiffs intend to seek punitive damages, notwithstanding the withdrawal of the IIED claim – which was the only claim in the Complaint under which punitive damages were sought.[7]

## A.   Facts

Plaintiff Wendy Light was a guest at the Doubletree Metropolitan Hotel in room 740.[8] Light checked in on June 22, 2009, while on a business trip to New York.[9] On June 23, 2009, at approximately 5:45 a.m., Light awoke, showered and dressed in the bathroom.[10] Upon returning to the bedroom to retrieve a pair of earrings from the night stand, Light noticed that the bed sheet

---

[5]   *Id.*

[6]   *Id.*

[7]   *See id.*

[8]   *See* Defendants' Local Rule 56.1 Statement of Undisputed Facts in Support of its Motion for Partial Summary Judgment ("Def. 56.1") ¶ 8; Plaintiffs' Local Rule 56.1 Counter-Statement of Undisputed Facts ("Pl. 56.1") ¶ 8.

[9]   *See id.*

[10]   *See* Narrative of Wendy Light ("Light Narr."), Ex. F to Gotlib Decl., at 1.

was dappled with hundreds of brown and red blood spots.[11] When Light turned on the bedside light, thousands of small brownish bugs retreated from the bed in every direction, fleeing up the wall, headboard, and onto the carpet.[12] Light immediately gathered her belongings and went to the front desk to notify the hotel of the situation.[13]

A member of the hotel security staff listened to Light's account, and informed her that she would be moved to a different room, that her suitcase would be held in isolation, and that the hotel would pay her costs if she required a hospital visit.[14] Light proceeded to the emergency room at nearby Lenox Hill Hospital, but left after being informed that there was a seven-hour wait.[15] Around 11:00 a.m., itchy welts began to appear on Light's body.[16] Subsequently, Light arranged to receive treatment from an internist in New York, Dr. Julian Klapowitz, who prescribed three medications including topical creams and antibiotics.[17] After

---

[11]   *See id.*

[12]   *See id.*

[13]   *See* Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.

[14]   *See* Light Narr. at 1.

[15]   *See* Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.

[16]   *See* Light Narr. at 2.

[17]   *See id.*

returning home, Light was treated by Dr. Stanley Bierman, a dermatologist.[18] Dr. Bierman tested Light for HIV, due to Light's concern that the insects may have transmitted that disease.[19] Those tests were negative.[20]

There had been previous incidents of bed bug infestation throughout the hotel prior to Light's stay, including in Room 740.[21] The hotel had utilized the services of two exterminators before June 22, 2009 to inspect for bed bugs and to conduct remedial treatment in rooms where bed bugs were found.[22] Room 740 was treated for bed bug infestation by Precision Pest Control Services on March 2-4, 2009, and a follow-up visit was conducted in April 2009.[23] There was no evidence of further infestation in Room 740 preceding Light's stay.[24]

## III. APPLICABLE LAW

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and

---

[18] *See id.* at 3.

[19] *See id.* at 4.

[20] *See id.* at 5.

[21] *See* Def. 56.1 ¶¶ 15, 18; Pl. 56.1 ¶¶ 15, 18.

[22] *See* Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.

[23] *See* Def. 56.1 ¶ 19; Pl. 56.1 ¶ 19.

[24] *See* Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[25] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[26] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[27] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[28]

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[29] The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[30] and

---

[25] Fed. R. Civ. P. 56(c).

[26] *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[27] *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[28] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[29] *See id.*

[30] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[31] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[32]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[33] However, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"[34] "'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[35] Summary judgment is

---

[31] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[32] *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[33] *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[34] *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[35] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[36] Summary judgment is not an all-or-nothing proposition. Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment as to a claim, defense, or part of a claim or defense.

### B. NIED

It has long been established that an individual who sustains physical injuries as a result of a tortfeasor's negligence may recover for pain and suffering – physical or mental – that is the natural and proximate result of the physical injuries.[37] A cause of action for NIED "has its roots in the acknowledgment by the courts of the need to provide relief in those circumstances where traditional theories of recovery do not."[38] As a narrow, interstitial cause of action, NIED allows for recovery for emotional harm in the *absence* of a contemporaneous physical injury.[39]

---

[36] *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[37] *See McDougald v. Garber*, 73 N.Y.2d 246, 251 (1989).

[38] *Abbatielo v. Monsanto Co.*, 522 F. Supp. 2d 524, 534 (S.D.N.Y. 2007) (citing *Lee v. McCue*, 410 F. Supp. 2d 221, 226-27 (S.D.N.Y. 2006)).

[39] *See In re Air Crash Disaster at Cove Neck, Long Island, N.Y. on Jan. 25, 1990*, 885 F. Supp. 434, 438 (E.D.N.Y. 1995).

## C. Punitive Damages

New York does not recognize an independent cause of action for punitive damages. Rather, a demand or request for punitive damages must be attached to a substantive cause of action. The controlling standard for punitive damages in New York "has been variously described but, essentially, it is conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard."[40] In order to recover punitive damages, it must be shown that the defendant "acted with actual malice involving an intentional wrongdoing, or that such conduct amounted to a wanton, willful or reckless disregard of plaintiffs' rights."[41] To support a finding of actual malice, there must be an "evil motive on the part of the defendant," such that the defendant's actions were done out of "hatred, ill will, [or] spite" for the plaintiff.[42] The New York Pattern Jury Instructions ("PJI")

---

[40] *Home Ins. Co. v. American Home Prods. Corp.*, 75 N.Y.2d 196, 203 (1990).

[41] *Ligo v. Gerould*, 665 N.Y.S.2d 223, 224 (4th Dep't 1997). *Accord Home Ins. Co.*, 75 N.Y.2d at 203 ("Such conduct need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness.").

[42] *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 479 (1993).

provides that malice requires "the *intent* to interfere with the rights of others."[43] There cannot be a finding of malice under New York law unless, at a minimum, the defendant intended to harm the plaintiff.[44]

To justify punitive damages based on wanton and reckless conduct, the defendant must have acted with a "conscious indifference and utter disregard of its effect upon the health, safety [or] rights of others."[45] As explained by the Second Circuit, "the recklessness that will give rise to punitive damages [in New York law] must be close to criminality."[46] Under this standard, "[a] person acts recklessly with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists."[47] "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a

---

[43] NY PJI 2:278 Damages – Punitive (emphasis added).

[44] *Cf. Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 838 (2d Cir. 1967) (noting that plaintiff "does not claim that defendant intended to harm him" and then considering whether defendant's conduct was reckless and morally culpable under New York law).

[45] NY PJI 2:278 Damages – Punitive.

[46] *Roginsky*, 378 F.2d at 843. *Accord Home Ins. Co.*, 75 N.Y.2d at 203 (referring to punitive damages as "a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine").

[47] *Roginsky*, 378 F.2d at 843 (quotation marks omitted).

reasonable person would observe in the situation."[48]

Punitive damages are never warranted unless "the very high threshold of moral culpability is met."[49] This is because punitive damages are "a socially exemplary remedy, not a private compensatory remedy."[50] Accordingly, to warrant the imposition of punitive damages, the reckless conduct at issue must be "sufficiently blameworthy" such that punishing it "advance[s] a strong public policy of the State."[51]

Two factors are particularly important in assessing the availability of punitive damages. *First*, as the Second Department explained in 2007, to analyze "the egregiousness of a tortfeasor's conduct, and the corresponding need for deterrence," courts must "take into account the importance of the underlying right or public policy jeopardized by the tortfeasor's conduct. . . . [T]he more important

---

[48] *Id.* (quotation marks omitted).

[49] *Giblin v. Murphy*, 73 N.Y.2d 769, 772 (1988).

[50] *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 358 (1976). *Accord Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (2007) ("Punitive damages are not to compensate the injured party but rather to punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future.").

[51] *Randi A.J. v. Long Island Surgi-Center*, 842 N.Y.S.2d 558, 564 (2d Dep't 2007) (emphasis added).

the right at issue, the greater the need to deter its violation."[52] *Second*, the plaintiff must introduce evidence that the defendant's conduct in the case, viewed at the time that conduct occurred, manifested a conscious disregard of an unacceptably high risk of harm.[53]

Although determination of a defendant's state of mind is generally a question for the jury, this does not relieve the court of its obligation to determine whether there is sufficient evidence for a reasonable jury to find that the requisite state of mind existed.[54] Once "all the evidence is . . . considered," the court must decide if "there is enough to warrant the finding that the law requires."[55]

## IV. DISCUSSION

---

[52] *Id.*

[53] *See In re Matter of New York City Asbestos Litig.*, 89 N.Y.2d 955, 956 (1997) (holding that punitive damages were not appropriate where there was evidence that defendant had general knowledge of the dangers of asbestos, but where defendant did not have knowledge that the workers alleged to be injured in the case "were at risk at any time it could have warned them."). *Accord Ross*, 8 N.Y.3d at 488-89 (holding that it would not be appropriate to punish an adoption agency for its 1960's era policy of not disclosing adopted children's mental health records in part because mental health professionals of that era "thought that mental illness could be avoided if a child were placed in a loving environment and that disclosure of birth parents' emotional disturbances would negatively affect the child's bonding with the adoptive parents").

[54] *See Roginsky*, 378 F.2d at 850.

[55] *Id.*

### A. NIED

The physical injuries suffered by Light may be redressed by way of traditional tort remedies. Any emotional or psychological harms stemming from the incident can also be redressed through compensatory damages available under Light's negligence cause of action.[56] Noneconomic damages for mental anguish and the emotional consequences of an injury are available and common in negligence actions. An independent NIED claim is cumulative, unnecessary, and therefore dismissed.

### B. Punitive Damages

In *Grogan v. Gamber Corporation d/b/a Milford Plaza*, a New York state trial court held that punitive damages were unavailable to two hotel guests that had been bitten by bed bugs.[57] In that case, the plaintiffs sought punitive damages from both the hotel and the exterminator that serviced the hotel, alleging that the hotel failed to inspect the plaintiffs' room for infestation, despite the fact that adjacent rooms had been treated for bed bugs. The court held that, while there

---

[56] *See Druschke v. Banana Republic*, 359 F. Supp. 2d 308, 316 (S.D.N.Y. 2005) (dismissing plaintiff's NIED claim on the grounds, *inter alia*, that her injuries could be redressed through assault and battery causes of action) (citing *Campoverde v. Sony Pictures Entm't*, No. 01 Civ. 7775, 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002)).

[57] 858 N.Y.S.2d 519 (Sup. Ct. N.Y. Co. 2008).

was a question of fact with regard to ordinary negligence, punitive damages were not available because there were no triable issues of fact as to whether the defendants had acted with such reckless abandon that punitive damages were available.[58] In making this determination, the court relied upon a published recommendation of the New York City Department of Health and Mental Hygiene that "anyone with bedbugs hire a pest control professional."[59] Because the hotel had followed that advice by hiring an exterminator, its conduct could not be considered egregious enough to justify punitive damages.

This case is nearly identical to *Grogan*, although there are minor differences. The Metropolitan repeatedly engaged the services of exterminators. There is no evidence that it ever declined a treatment recommended by the exterminators due to cost concerns. Although Light's room had a prior documented infestation – unlike *Grogan* – there is no evidence that the Metropolitan had any reason to suspect that the infestation had returned. More than three months had passed since the room was treated, and there were no guest complaints in the interim. Likewise, no cleaning staff or other hotel personnel had reported seeing the telltale signs of bed bug infestation in Room 740, despite daily

---

[58] *See id.* at 527.

[59] *See id.*

14

cleaning activities by the staff.

Plaintiffs urge this court to follow the holding in *Mathias v. Accor Economy Lodge, Inc.*, a Seventh Circuit case upholding punitive damages in a bed bug suit for damages.[60] However, that case is easily distinguished. In *Mathias*, upper management had refused to fumigate the hotel, even though the infestation was of "farcical proportions,"[61] was well-known by the hotel staff, and had been confirmed by an exterminator who had quoted a reasonable price to fumigate the premises. Additionally, the *Mathias* plaintiffs' room had been classified as "DO NOT RENT UNTIL TREATED," and it had not been treated when the plaintiffs checked in.[62] Further, the Seventh Circuit noted that the hotel's "deliberate exposure of hotel guests to the health risks created by insect infestations exposes the hotel's owner to sanctions under Illinois and Chicago law that in the aggregate are comparable in severity to the punitive damage award in this case."[63] There are no comparable violations of code or state statutes alleged in the present case. In

---

[60]   347 F.3d 672 (7th Cir. 2003).

[61]   *Id.* at 675 ("a guest, after complaining of having been bitten repeatedly by insects while asleep in his room in the hotel was moved to another room only to discover insects there; and within 18 minutes of being moved to a third room he discovered insects in that room as well and had to be moved still again").

[62]   *Id.*

[63]   *Id.* at 678.

15

sum, there is insufficient evidence for a reasonable jury to find that the Metropolitan acted with the wantonness required for punitive damages.

### C.   Misleading Advertisement

The Metropolitan brought this motion believing that plaintiffs intended to pursue a false advertising claim under federal law. In their opposition memorandum, plaintiffs clarify that they do not intend to maintain such a claim. Rather, plaintiffs now seek to incorporate the false advertising allegation into their negligence claim, arguing that if "Light chose [the Metropolitan], partly because it was touted as a Hilton brand offering the best of service and accommodations . . . then it would be proper for the jury [to consider] . . . that this was another operative fact that proved the defendants' negligence . . . ."[64] Because plaintiffs make no separate false advertising claim, summary judgment is not an available remedy. Instead, the motion for summary judgment as to false advertising may be recast as a motion *in limine* to exclude plaintiffs from offering evidence of the allegedly false advertisement at trial.

The plaintiffs' allegations of false or misleading advertisement are based upon advertisements that Light saw on the Hilton website through which

---

[64]   Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment at 17.

she booked her reservation. The advertisement represented that Hilton hotels provide "unsurpassed commitment to hospitality[] . . . [and] for 90 years, our brands have provided business and leisure travelers the finest in accommodations, service, amenities and value."[65] No evidence is presented that the Metropolitan had any control over or input into that advertisement. Rather, as per its Franchise Agreement with the Metropolitan, Hilton, as the Franchisor, was responsible for the maintenance and operation of all hotel brand websites, booking sites, and marketing.[66] Because the Metropolitan did not produce or have any control over the Hilton website, the advertisements on that website cannot be introduced at trial.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment is granted with respect to the NIED claim and the request for punitive damages. Plaintiffs are also barred from introducing the advertisements on Hilton's website as evidence at trial. The Clerk of the Court is directed to close this motion (Docket No. 31).

---

[65] Compl. ¶ 24(h).

[66] *See* Franchise Agreement, Ex. H to Gotlib Decl. at 6.

SO ORDERED:

*[signature]*

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 2, 2011

## -Appearances-

**Counsel for Plaintiffs:**

Norman Perlberger, Esq.
Pomerantz Perlberger & Lewis LLP
One Presidential Blvd.
Suite 315
Bala Cynwyd, Pennsylvania 19004
Tel: (610) 664-3222

**Counsel for Defendants:**

Mayya S. Gotlib, Esq.
Mintzer, Serowitz, Zeris, Ledva
& Meyers LLP
39 Broadway, Suite 950
New York, New York 10006
Tel: (212) 968-8300